UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| COUNTRY PREFERRED INS. CO., | ) | |
| | ) | |
|    Plaintiff/Counter-defendant, | ) | |
| | ) | |
| vs. | ) | Case No. 4: 17 CV 2369 CDP |
| | ) | |
| CHRISTOPHER LEE, et al., | ) | |
| | ) | |
|    Defendants/Counter-Plaintiffs. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

Country Preferred issued three automobile insurance policies to Christopher and Sandra Lee, each with a policy limit of $100,000. The Lees paid separate premiums on each policy for underinsured motorist (UIM) coverage. On November 2, 2016, Christopher Lee was struck by a wrong-way driver while riding his motorcycle and suffered substantial injuries. The at-fault driver had an automobile insurance policy with a policy limit of $100,000, and his insurance company settled with the Lees for the full amount.

The Lees now seek to recover additional amounts from Country Preferred under the UIM provisions of their own insurance policies. Because Country Preferred contends that the Lees are not entitled to UIM coverage, it filed this declaratory judgment action seeking a declaration that it was not obligated to pay the Lees any amounts under their insurance policies. The Lees then filed

counterclaims, seeking a declaration that Country Preferred owes them the full amount of the UIM coverage under each of the three policies and alleging unjust enrichment, fraud, and vexatious refusal to pay.

Before me now is Country Preferred's motion for judgment on the pleadings. Because the Lees are not entitled to recovery under the unambiguous UIM provisions of their policies or any of their counterclaims, the motion will be granted.

## Standards Governing Motions for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is reviewed using the same standard that governs a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *NanoMech, Inc. v. Suresh*, 777 F.3d 1020, 1023 (8th Cir. 2015) (citing *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 912-13 (8th Cir. 2014)). Therefore, courts must consider whether the complaint pleads "'enough facts to state a claim that is plausible on its face.'" *NanoMech*, 777 F.3d at 1023 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009)). "'[L]egal conclusions' and 'threadbare recitations of the elements of a cause of action, supported by mere conclusory statements,' are not entitled to a presumption of truth when considering the sufficiency of a complaint." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level . . . .'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court does not accept as true any "'legal conclusion couched as a factual allegation.'" *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

<u>Relevant, Undisputed Background Facts</u>

The Lees had three automobile insurance policies with Country Preferred at the time of Christopher Lee's accident. The first policy was issued to Christopher

3

Lee and insured his 2015 Harley Davidson motorcycle (Insurance Policy Number P24A5361315). It had effective dates of May 29, 2016 through May 29, 2017. The second policy was issued to Christopher Lee and insured a 2015 Ford automobile (Insurance Policy Number P24A7818593). It had effective dates of June 29, 2016 through December 29, 2016. The third insurance policy was issued to Sandra Lee and insured a 2008 Dodge automobile (Insurance Policy P24A7450349). It had effective dates of June 10, 2016 through December 10, 2016. The three policies contain identical language with respect to the relevant provisions at issue in this case.

Each policy has UIM coverage limits of $100,000. The policies state as follows:

> **SECTION 2**
> **Uninsured-Underinsured Motorists, Coverage U**
> If **you** have paid for this coverage (see the declarations page), we will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured or underinsured motor vehicle** because of bodily injury sustained by an **insured** and caused by an accident. The owner's or operator's liability for these damages must arise from the ownership, maintenance or use of the **uninsured or underinsured motor vehicle.**

[Doc. # 1-1 at 8; Doc # 1-2 at 8; Doc. # 1-3 at 8] (emphasis in original). The policies define "underinsured motor vehicle" as "any type of **motor vehicle** or trailer which the sum of all liability bonds or policies at the time of an accident are less than the limits of liability of the Uninsured Motorist coverage carried on this policy." [Doc. # 1-1 at 20; Doc. #1-2 at 20; Doc. # 1-3 at 20] (emphasis in

4

original). It is undisputed that the uninsured motorist coverage limit in each of the three policies is $100,000. This means that under the plain language of the policies, a vehicle is not "underinsured" if it is covered by an insurance policy with a limit of at least $100,000. The "Limits of Liability" under each policy state as follows:

> 2**. Limits of Liability**. The Uninsured – Underinsured Motorists limits of liability shown on the declarations page apply as follows:
> a. The limit of liability for "each person" is the maximum amount we will pay for all damages arising out of bodily injury to any one person in any one accident. That maximum amount includes any claims of other persons for damages arising out of that bodily injury.
> That figure listed is the most **we** will pay for any one person in any one accident regardless or the number of **insureds**, claims made, **insured vehicles**, premiums shown on the declarations page, or **uninsured or underinsured motor vehicles** involved in the accident.

[Doc. # 1-1 at 10; Doc. #1-2 at 10; Doc. # 1-3 at 10] (emphasis in original).

The policies also contain the following language:

> 8. Other Vehicle Insurance with Us. If this policy and any other vehicle insurance policy issued to **you** or a **relative** by one of **our** companies apply to the same accident, the maximum limit of **our** liability under all the policies will not exceed the highest applicable limit of liability under any one policy.

[Doc. # 1-1 at 17; Doc. #1-2 at 17; Doc. # 1-3 at 17] (emphasis in original). It is undisputed that the "highest applicable limit of liability under any one policy" in this case is $100,000. Finally, each of the three policies contains the following provision:

5

> 2**. Other Insurance**. If there is other applicable uninsured – underinsured motorists insurance that covers a loss, **we** will pay **our** proportionate share of that loss. Our share is the proportion our limits of liability bear to the total of all applicable limits.

[Doc. # 1-1 at 11; Doc. #1-2 at 11; Doc. # 1-3 at 11] (emphasis in original).

The Lees contend that their damages arising out of Christopher Lee's motorcycle accident exceed $400,000. The at-fault driver had an insurance policy covering the accident with a policy limit of $100,000, and his insurance company paid the full policy limit to the Lees in settlement of their claim. The Lees now seek to recover under the UIM provisions of their insurance policies with Country Preferred because Christopher Lee's damages greatly exceed the $100,000 they recovered from the at-fault driver. According to the Lees, they are entitled to recover under the UIM provisions of each policy for a total amount of $300,000. Country Preferred contends that the UIM provisions of the policies do not apply and that the Lees are not entitled to "stack" their policies as a matter of law.

## Discussion

Because this is a diversity case, I apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The parties agree that Missouri law controls.

In Missouri, there is no statutory requirement that an automotive insurance contract contain UIM coverage, so its existence is determined by the contract entered into between the parties. *Rodriguez v. General Accident Ins. Co. of Am.*,

808 S.W.2d 379, 383 (Mo. banc 1991). Under Missouri law, general rules of contract construction apply when interpreting an insurance policy. *Todd v. Missouri United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007). "The key is whether the contract language is ambiguous or unambiguous." *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. banc 1993). "Absent an ambiguity, an insurance policy must be enforced according to its terms." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007); *see also Rodriguez*, 808 S.W.2d at 383.

If ambiguity exists, the court interprets the policy in favor of the insured. *Todd*, 223 S.W.3d at 160. "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010) (quoting *Seeck*, 212 S.W.3d at 132). "Courts should not interpret policy provisions in isolation but rather evaluate policies as a whole." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. banc 2009). Courts must "endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant." *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. Ct. App. 2008). Courts must apply "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance . . . ." *Seeck*, 212 S.W.3d at 132

(internal quotations and citations omitted). "'A contract or provision . . . is not ambiguous merely because the parties disagree over its meaning.'" *Gohagan v. Cincinnati Ins. Co.*, 809 F.3d 1012, 1016 (8th Cir. 2016) (quoting *Atlas Reserve Temps., Inc. v. Vanliner Ins. Co.*, 51 S.W.3d 83, 87 (Mo. Ct. App. 2001)).

Under the plain language of the policies, the at-fault driver was not an underinsured motorist because he had insurance coverage equal to the limits of the Lees' policies. The policies define "underinsured motor vehicle" as "any type of motor vehicle or trailer which the sum of all liability bonds or policies at the time of an accident **are less than the limits of liability of the Uninsured Motorist coverage carried on this policy.**" (emphasis added). The at-fault driver had a policy limit of $100,000. It is undisputed that the Lees had uninsured motorist coverage of $100,000. Therefore, under the unambiguous provision of the policies, the at-fault driver was not an underinsured motorist.

The Missouri Supreme Court recently reached the same conclusion upon considering a nearly identical definition of "underinsured motorist" in *Swadley v. Shelter Mut. Ins. Co.*, 513 S.W.3d 355 (Mo. 2017). In that case, the Swadleys had an insurance policy with UIM coverage in the amount of $100,000. *Id.* at 356. The policy defined "underinsured motor vehicle" as "a motor vehicle covered by a liability bond, governmental liability statute, or insurance policy, applicable to the occurrence; but the monetary limits of that bond, statutory coverage, or policy, are

less than the limits of underinsured motorists coverage shown in the Declarations." *Id.* The Missouri Supreme Court held that the "clear and intentional effect of this definition is that UIM coverage will not apply when the underinsured motorist has liability coverage equal to or greater than $100,000." *Id.* In rejecting the Swadleys' arguments that the policy language was ambiguous, the Missouri Supreme Court reasoned as follows:

> Nowhere does this policy expressly promise UIM coverage under every circumstance, and nowhere does it promise UIM coverage when the underinsured motorist has liability coverage equal to or greater than the UIM limit. Therefore, the policy is not rendered ambiguous by the fact that the policy's definition of "underinsured motor vehicle" restricts UIM coverage to applying only when the underinsured motorist has liability coverage less than the UIM limit . . . .
>
> The definition of "underinsured motor vehicle"—and consequently, when this policy's UIM coverage applies—is clear and unambiguous within the context of the policy as a whole. Indeed, this Court previously rejected the argument that a nearly identical definition of "underinsured motor vehicle" rendered a policy ambiguous. *See Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 382–83 (Mo. banc 1991). The Swadleys, though, argue that, aside from the definition of "underinsured motor vehicle," the policy is ambiguous because it promises UIM coverage up to $100,000 but contains set-off provisions ensuring that Shelter will never be obligated to pay that full amount. But any ambiguity as to the amount of UIM coverage provided by this policy is irrelevant because such an ambiguity, if one exists, would not render this policy ambiguous as to when UIM coverage applies. Evaluating the policy as a whole, UIM coverage unambiguously does not apply when, as here, the underinsured motorist has liability coverage equal to or greater than $100,000.

*Id.* at 357-58. The same reasoning applies here. The Lees' UIM coverage unambiguously does not apply because the at-fault driver had liability coverage equal to $100,000.

The Missouri Supreme Court had earlier reached the same conclusion in *Rodriguez v. General Accident Ins. Co. of America*, 808 S.W.2d 379 (Mo. 1991). As in *Swadley*, the court held that the plaintiffs were not entitled to UIM coverage when the at-fault driver's vehicle did not meet the insurance policy's unambiguous definition of "underinsured motor vehicle":

> The contract between [the insurance company] and the [plaintiffs] clearly states that an underinsured motor vehicle is a vehicle whose limits for bodily injury liability are "less than the limit of liability for this coverage." By their own admission, the [plaintiffs] acknowledge that [the at-fault driver's] liability insurance coverage was $50,000. Since [the at-fault driver's] coverage is equal to the limit of liability under the [plaintiffs'] policy, [the at-fault driver] was not an underinsured motorist as defined by the [plaintiffs'] policy.

*Id.* at 382. The Lees are not entitled to UIM coverage for the same reason – the at-fault driver's coverage here is equal to the $100,000 limit of uninsured motorist coverage under the Lees' policies, so the at-fault driver is not an underinsured motorist as defined by their policies.

In an attempt to evade the controlling decisions of the Missouri Supreme Court and the unambiguous language of their policies, the Lees argue that they should be able to "stack" the UIM coverage of their three policies, such that their coverage limit is really $300,000, not $100,000. Under their argument, the at-fault

10

driver would qualify as an underinsured motorist because his policy limit would be less than the limit of the stacked policies. "'Stacking' refers to an insured's ability to obtain multiple insurance coverage benefits for an injury either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or from multiple coverages provided for within a single policy, as when an insured has one policy which covers more than one vehicle." *Niswonger v. Farm Bureau Town & Country Ins. Co. of Mo.*, 992 S.W.2d 308, 313 (Mo. Ct. App. 1999). As with the existence of UIM coverage, "its ability to be stacked [is] determined by the contract entered between the insured and the insurer." *Rodriguez*, 808 S.W.2d at 383.

> The Lees' policies contain the following anti-stacking language:
>
> 8. Other Vehicle Insurance with Us. If this policy and any other vehicle insurance policy issued to **you** or a **relative** by one of **our** companies apply to the same accident, the maximum limit of **our** liability under all the policies will not exceed the highest applicable limit of liability under any one policy.

[Doc. # 1-1 at 17; Doc. #1-2 at 17; Doc. # 1-3 at 17] (emphasis in original). It is undisputed that the "highest applicable limit of liability under any one policy" in this case is $100,000. The Lees argue that this policy language is ambiguous when read in conjunction with the "other insurance" clause and should therefore be construed in favor of stacking. The Lees are wrong.

11

The Eighth Circuit Court of Appeals interpreted nearly identical anti-stacking language in *Gohagan v. Cincinnati Ins. Co.*, 809 F.3d 1012, 1015–17 (8th Cir. 2016), finding it unambiguous as a matter of law. In *Gohagan*, the plaintiff was injured by a tree being removed from another's property. *Id.* at 1014. The property owner had two insurance policies issued by Cincinnati Insurance Company. *Id.* Each policy had a $1,000,000 per occurrence limit and similar policy language prohibiting stacking. *Id.* The anti-stacking provisions provided as follows:

> If this policy and any other policy issued to you by us or any company affiliated with us apply to the same "occurrence" or "personal and advertising injury" offense, the aggregate maximum limit of insurance under all the policies shall not exceed the highest applicable limit of insurance under any one policy.

*Id.* at 1015.[1] The Gohagans argued that this language was ambiguous because the policies did not define "aggregate maximum limit of insurance." *Id.* at 1015-16. Applying Missouri law, the Eighth Circuit rejected the Gohagans' argument as follows:

> Here, the anti-stacking provisions viewed in their entirety are unambiguous. By focusing solely on "aggregate maximum limit of insurance," the Gohagans ignore the stipulation that the aggregate maximum limit "shall not

---

[1] The second policy provided as follows: "If this Coverage Part and any other Coverage Form, Coverage Part or policy issued to you by us or any company affiliated with us apply to the same 'occurrence' or 'personal and advertising injury' offense, the aggregate maximum limit of insurance under all the Coverage Forms, Coverage Parts or policies shall not exceed the highest applicable limit of insurance under any one Coverage Form, Coverage Part or policy." *Gohagan*, 809 F.3d at 1016.

exceed the highest applicable limit of insurance under any one policy." In this case, the tree-falling incident that resulted in Mr. Gohagan's injury represents the "occurrence" from which our interpretation of the policies flows. Both policies have an each-occurrence limit of $1,000,000. For the occurrence at issue, then, the "highest applicable limit of insurance" under either individual policy is equivalent to the each-occurrence limit. Thus, the aggregate maximum limit of insurance under both policies combined may not exceed the each-occurrence limit under either policy—in this case, $1,000,000. *See Smith v. Wausau Underwriters Ins. Co.*, 977 S.W.2d 291, 294 (Mo. Ct. App. 1998) (applying an anti-stacking clause nearly identical to those at issue here to limit the "aggregate maximum limit of liability" under two policies issued by the insurance company or affiliate to an amount "not exceed[ing] the highest applicable limit of liability" under either policy). Reading the anti-stacking provisions as a whole, *see Secura Ins v. Horizon Plumbing, Inc.*, 670 F.3d 857, 861 (8th Cir. 2012), the Gohagans therefore received the full amount of coverage owed to them under the BOP and CGL policies when Cincinnati paid them $1,000,000 pursuant to the CGL policy.

*Id.* at 1016-17. The anti-stacking provision in the Lees' policies compels the same conclusion here. As in *Gohagan*, the anti-stacking provision in the Lees' policies is not ambiguous because it uses the identical language to limit the maximum amount of liability "under all the policies" to "the highest applicable limit of liability under any one policy," which in this case is $100,000. Because the limit of the Lees' UIM coverage is $100,000, and they received the policy limit of $100,000 from the at-fault driver's insurance company, they are not entitled to stack and recover under the UIM provisions of their insurance policies as a matter of law.

The Lees also argue that the "other insurance" clause of their policies renders the UIM provision ambiguous. The "other insurance" provision provides

13

that "[i]f there is other applicable uninsured – underinsured motorists insurance that covers a loss, **we** will pay **our** proportionate share of that loss. Our share is the proportion our limits of liability bear to the total of all applicable limits."

The Lees' argument as to "other insurance" was considered and rejected by the Eighth Circuit in *Gohagan*. In that case, the Gohagans argued that the "other insurance" clauses provided primary coverage which the anti-stacking provisions impermissibly limited, thereby rendering the policies ambiguous. *Gohagan*, 809 F.3d at 1017. While acknowledging the general rule in Missouri that an "other insurance" clause which appears to provide coverage can render a policy ambiguous where other clauses indicate that such coverage is not provided, the Eighth Circuit nevertheless concluded that the anti-stacking provisions were not rendered ambiguous by the "other insurance" provisions in the policies. *Id.* (citing *Seeck*, 212 S.W.3d at 134). It held as follows:

> The Gohagans' interpretation, however, again mistakenly relies on reading an individual provision in isolation from the rest of the policy, an approach that would leave the anti-stacking provisions meaningless. The district court correctly determined that the "Other Insurance" provisions apply when policies covering the same injury are issued by Cincinnati and another insurance company, not when two policies are issued by Cincinnati. Instead, the [anti-stacking] provisions apply when policies covering the same injury are issued by Cincinnati alone. The Gohagans' interpretation, the district court continued, would render the [anti-stacking] provisions meaningless, an outcome courts seek to avoid when interpreting contracts. *Nodaway Valley Bank v. E.L. Crawford Const., Inc.*, 126 S.W.3d 820, 827 (Mo. Ct. App. 2004). We agree. The Gohagans' attempts to create ambiguity where none exists have failed.

*Id.* at 1017. The Eighth Circuit reached the same conclusion in *Murray v. American Family Mutual Ins. Co.*, 429 F.3d 757 (8th Cir. 2005). In *Murray*, the plaintiffs were hit by an at-fault driver who had liability insurance coverage in the amount of $25,000. *Id.* at 759-60. Plaintiffs had four UIM policies with their insurance company, each with a policy limit of $100,000. *Id.* at 759. While it was undisputed that plaintiffs were entitled to recover under one of their UIM policies, the issue before the court was whether the plaintiffs could stack their UIM coverage and recover under all four policies. *Id.* at 765.

Like the Lees, the plaintiffs in *Murray* argued that the "other insurance" provision in their policies created an ambiguity which allowed stacking. *Id.* Applying Missouri law, the Eighth Circuit rejected the plaintiffs' argument, finding that the policies were not ambiguous because they contained the following "two or more cars insured" provision: "the total limit of our liability under all policies issued to you by us shall not exceed the highest limit of liability under any one policy." *Id.* at 766. The Eighth Circuit concluded that the insurance policies were not rendered unambiguous by the "other insurance" clause and that they unambiguously prohibited stacking. *Id.* at 766.

The same analysis applies to the Lees' policies here. The "other vehicle insurance with us" provision in their policies is the substantive equivalent of the "two or more cars insured" provisions analyzed in *Murray* and the anti-stacking

15

provisions in *Gohagan*. As in those cases, the "other insurance" provision in the Lees' policies does not render them ambiguous when the policies are read as a whole in conjunction with the "other vehicle insurance with us" provision. *See Murray*, 429 F.3d at 766 (interpreting policy to give effect to all provisions). As explained in *Murray*, these provisions apply in different situations:

> The "two or more cars insured" provision clearly covers situations where two or more cars belonging to the same insured are covered by policies issued by [the insured's insurance company]. It unambiguously provides that in that case [the insured's insurance company]'s total liability will not exceed the highest liability under any one policy. Read in this context, the other insurance clause refers only to a situation where a different policy issued by a different company applies. If this provision were intended to refer to other policies issued by [the insured's insurance company], there would be no need to refer to a proportionate share; the [insured's insurance company]'s proportionate share would always be 100%. Moreover, reading the other insurance clause in this manner would render the anti-stacking provision meaningless. Each clause applies to a different situation, and the antistacking clause is simply not ambiguous.

429 F.3d at 766 (internal quotations and citations omitted). The reasoning in *Murray* controls here. Because the Lees' "other insurance clause refers only to a situation where a different policy issued by a different company applies," *id.*, it does create an ambiguity with respect to the antistacking clause. *See id.*

The Lees' reliance on *Clark v. Am. Family Mut. Ins. Co.*, 92 S.W.3d 198 (Mo. Ct. App. 2002), to support their argument that the policies are ambiguous and should be construed in favor of stacking is misplaced. The Eighth Circuit considered and rejected the same argument in *Murray*. 429 F.3d at 765-66. While

acknowledging that *Clark* construed a similar policy, the Eighth Circuit nevertheless concluded that it was not bound by the state court's interpretation of the "other insurance" clause because the *Murray* policy contained an additional "two or more cars insured" provision which resolved any ambiguity with respect to stacking. *Id.* Because the Lees' policy contains the same type of clarifying anti-stacking policy in *Murray*, I likewise find that the decision in *Clark* does not render the policy at issue here ambiguous. *See also, Midwestern Indem. Co. v. Brooks*, 779 F.3d 540, 546-47 (8th Cir. 2015); *Gillispie v. Twin City Fire Ins. Co.*, 112 F. Supp. 3d 900, 904-05 (E.D. Mo. 2015).

Because the Lees are not entitled to UIM coverage under the unambiguous provisions of their policies, Country Preferred is entitled to judgment in its favor on its complaint and on the Lees' counterclaim for declaratory relief.

Country Preferred also seeks judgment in its favor on the Lees' remaining state law claims. Because the Lees are not entitled to UIM coverage, their claim that Country Preferred vexatiously refused to pay them (Count III) necessarily fails. *See BSI Constructors, Inc. v. Hartford Fire Ins. Co.*, 705 F.3d 330, 335 (8th Cir. 2013) (vexatious refusal claim must fail where insurer has no obligation to pay).

The Lees' claims for fraud and unjust enrichment also fail. The basis for both claims is that Country Preferred allegedly collected premiums from the Lees

17

for multiple policies even though they never intended to pay UIM coverage on more than one policy. According to the Lees, if they are not permitted to stack their policies then the promise of coverage is illusory and fraudulent. Again, the Lees are wrong. This argument was rejected by the Missouri Supreme Court in *Rodriguez*, which held that an underinsurance policy is not illusory or ambiguous because of "the mathematical inability to collect the full . . . underinsured motorist coverage . . . The effect of underinsured motorist coverage is to assure the insured of receiving the contracted amount of protection." 808 S.W.3d at 383 n.1. The Eighth Circuit has also rejected this argument, concluding as a matter of law that a policy is not rendered illusory simply because it prohibits stacking:

> The Daughhetees also argue that a construction of the [insurance] policy that prohibits UIM stacking renders the policy illusory. Under Missouri law, an illusory promise is on that appears to be a promise, but in fact promises nothing. *See Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1110 (8th Cir. 2006). The district court correctly ruled that the [insurance] policy is not illusory. Paragraph 1 permits payment of the highest applicable limit of any one State Farm UIM policy. That the applicable limits are the same does not render the policy illusory.

*Daughhetee v. State Farm Mut. Auto Ins. Co.*, 743 F.3d 1128, 1134 (8th Cir. 2014). The same reasoning applies here. The Lees' policies are not rendered illusory merely because they unambiguously prohibit stacking, and it was not fraud for Country Preferred to provide only the contracted amount of UIM protection in this case. That the Lees were not entitled to UIM coverage in this situation because the at-fault driver's coverage equaled their own does not render the policy illusory or

18

demonstrate that Country Preferred would not pay UIM benefits if required to do so under the policy. "A guarantee by [an insurer] of a minimum recovery is not an illusory protection, nor is it harsh to enforce a contract between an insurer and insured that guarantees insured will recover, from some source, the amount of insurer's damage up to the limit of UIM coverage." *Melton v. Country Mut. Ins. Co.*, 75 S.W.3d 321, 327 (Mo. Ct. App. 2002). Nor are the Lees' claims saved by their "reasonable expectations" argument, since the reasonable expectation doctrine does not apply if an insurance contract is unambiguous. *Rodriguez*, 808 S.W.2d at 382-83.

Because the Lees are not entitled to UIM coverage under the unambiguous provisions of their insurance policies and their claims for unjust enrichment and fraud fail, Country Preferred is entitled to judgment in its favor on its claim for declaratory relief and on all counterclaims.

Accordingly,

**IT IS HEREBY ORDERED** that the motion for judgment on the pleadings [24] is granted.

A separate Judgment is entered this same date.

                        */s/ Catherine D. Perry*
                        CATHERINE D. PERRY
                        UNITED STATES DISTRICT JUDGE

Dated this 4th day of May, 2018.